UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL R. DUNAWAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:20CV11 HEA |
| KILOLO KIJAKAZI,[i] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff for disability insurance benefits and supplemental security income benefits under Title XVI, 42 U.S.C. §§ 401-434, 1381-1385. The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff's claims were initially denied however this Court remanded the matter on March 4, 2019 for consideration of Plaintiff's claims of insomnia and hypersomnolence. After a new hearing before a different Administrative Law Judge, (ALJ), the ALJ issued a partially favorable decision dated December 10, 2019. The ALJ determined that Plaintiff was not under a disability at any time from his alleged onset date of June 26,

2014 through December 3, 2019 but became disabled on December 4, 2019 because his age category changed to "closely approaching advanced age." In her decision, the ALJ found Plaintiff had the severe impairments of severe impairments of degenerative disc disease, degenerative joint disease, status-post hernia repair, diabetes mellitus, coronary artery disease (status-post myocardial infarction), hypertension, a seizure disorder, obesity, insomnia/sleep apnea, depression, anxiety, and past-traumatic stress disorder (PTSD) (Tr. 861). However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix. While the ALJ found none of Plaintiff's impairments met or equaled a listed impairment, she did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ropes, ladders, or scaffolds, and never balance (defined in the DOT and SCO as walking, crouching or running on narrow, slippery, or erratically moving surfaces), kneel, crouch, or crawl, but can occasionally climb ramps and stairs, and occasionally stoop. He can frequently reach
> and handle. He can have no exposure to unprotected heights or hazardous machinery; cannot drive a vehicle as part of the job; and can have no concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation. The claimant can learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only minimal changes in job setting and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks;
> and is able to work a full day without needing more than the allotted number or

length of rest periods during the day while performing simple, routine tasks. He can have no contact with the general public; and he is able to work close to or occasionally with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

Based on vocational expert testimony, the ALJ found Plaintiff could perform work such as circuit board touch-up worker, a semiconductor bonder, and an electronic patcher.

The decision of the ALJ stands as the final decision of the Commissioner.

## Hearing Testimony

On October 29, 2019, Plaintiff testified he was 49 years old and at his onset date in June 2014, he was 44. He is single and has two children, neither of whom live with him. He lives alone in a government subsidized apartment. He receives Medicaid. Plaintiff is 5' 11" and weighs 302 pounds. His weight has varied by 40 or 50 pounds due to medication. In the past 5 years he has never had a normal night sleep with his sleep apnea and CPAP machine. He considered bariatric surgery, but he could not handle driving back and forth weekly two and a half hours each way. He limits his driving due to leg cramps and back pain. He has fallen asleep at the wheel.

He has a high school diploma; he had no other training, nor was he in the military. He worked for Rent-A-Center for 16 years as the store manager and work along-side the four other employees moving furniture in and out of the store. He would have lifted a couple hundred pounds with the use of a dolly. He had a worker's comp

case on his back with that employer. No surgery was recommended; he was told to try rehabilitation, but it never got better. He was on FMLA for six months due to a double hernia surgery. In 2011, he was in the hospital for a couple months with a brain abscess. He took off work another six months for that recovery. His job ended in June 2014 after he started having psychological problems.

Plaintiff started psychiatric at Blessing Hospital in Quincy, IL but switched to Geoffrey Westhoff at mark Twain Behavioral Health in 2015. Westhoff diagnosed Plaintiff with PTSD, depression and anger issues. Prior to his brain abscess in 2011 he had no psychiatric problems. The doctors think his problems stem from that surgery. Plaintiff's anger issues happened three or four times a week before he left the job at Rent-A-Center. He'd raise his voice, lose his temper with employees or customers, and even tried to get physical with a few customers who egged him on. Since he left that job in June 2014, his anger issues are limited because he lives by himself and he isolates himself from friends and family. He has not seen his 16-year-old daughter for three years. She stays away because of his psychiatric problems. He is scheduled to see his son every other weekend and some extra time in the summer, but Plaintiff has missed some visitations due his health. His mother and sister live in the same town as he but sees them maybe once a month; he has anger outbursts with them. He experiences road rage when driving, even during the limited trips he makes to the grocery store. Every time he gets behind the wheel somebody does something to drive him crazy and he wants to stop and get out of

his car.

Plaintiff has not dealt appropriately with grief. His fiancé passed away in February 2017; he has crying spells and talks to her and hears her talk back. He has thoughts of dying a few times a week but has not acted on them.

After the brain abscess, Plaintiff experienced petit mal seizures. It took some years to get it under control with medication; the neurologist increased his pills from one to two a day and the tremors and shakes have been under control for a year and a half. He has been diagnosed since June 2012 with sleep apnea and has been on a CPAP machine which he uses every night and even during the day when he lies down. Plaintiff's typical sleep pattern is to load up on medications at night, lie down and might drift off for an hour or two, and then is awake. He can be awake for a half hour, an hour, or the rest of the night. Even if he takes more medication, his body doesn't cooperate. Though he is tired and desperately wants to sleep, the doctors haven't found the right combination of medication. They have made changes because either the sleep isn't working, or his attitude is out of whack.

Plaintiff is Type 2 diabetic and he treats with pills, not insulin. He does not check his blood because he has it under control. In February 2016 Plaintiff had heart stents put in; he experiences chest pain if he is more active than resting in bed watching TV. After being on his feet reaching for 10 or 15 minutes, he gets short of breath and has chest pain.

In October 2016 he went to the ER due to chest pain about eight months after the heart stents. He has a constant fear of having another heart attack. It is because of his

5

"widow maker block" that his orthopedic surgeon says he is not a candidate for back surgery.

Plaintiff has had a home attendant since 2017 when he moved. The attendant comes a couple times a week to do things like grocery shopping, prepare meals, help with laundry, sweeping, dusting and mopping; the attendant does all the physically active cleaning. He tries to pick up light stuff and not leave a mess.

Plaintiff has back pain daily for which he takes two daily medications. He takes hydrocodone, and Flexeril for the muscle spasm. He uses a heating pad daily. He uses a TENS unit. The pain radiates down to his kneecaps. He spends most of his day in bed. Other than using the restroom or getting something to eat or drink, the bed is the most comfortable position for him.

Plaintiff testified it is a combination of the back pain, depression and insomnia that keeps him from being physically active. The doctors tell him to sleep when he can, even if that is during the day. If he doesn't sleep, there is more stress on his heart. If he lays down with a heating pad and CPAP machine on and he gets a three-hour nap, he won't fight it. At nighttime if he lays down, sometimes his eyes are wide open. He can have racing thoughts and his brain won't turn off.

A Vocational Expert (VE) testified that Plaintiff's past work was as a rental manager. However, it was performed at heavy and the VE agreed with that classification having done job analysis on that occupation. The ALJ posed the following hypothetical: an individual with the Plaintiff's same age,

5

education and past job, limited to sedentary work with no climbing ropes, ladders or scaffolds, only occasional ramps and stairs, never balance, defined as walking, crouching or running on narrow, slippery or erratically moving surfaces; can occasionally stoop, but never kneel, crouch or crawl; can frequently reach and handle; no exposure to unprotected heights or hazardous machinery; no driving a vehicle; no concentrated exposure to pulmonary irritants such as dust, fumes, odors gases or poor ventilation; is able to learn, remember and carry out simple, routine tasks and make simple routine work-related decisions; able to work at an appropriate, consistent pace while performing simple, routine tasks, but must have only minimal changes in job setting and duties; is able to sustain an ordinary and routine regular attendance and be able to work a full day without needing more than the allotted number of rest periods; no contact with general public but occasionally with co-workers or supervisors without interrupting or distracting them. That person cannot perform Plaintiff's past work but could perform the following sedentary jobs (1) circuit board screener; (2) semiconductor bonder (3) patcher.

A second hypothetical added the need to take two additional breaks during the workday for naps. There are no jobs in the national economy that allow for that. Those jobs would only tolerate one day absence a month after a 90-day probationary period, with no more than 10 days in 12 months. The jobs would not tolerate more than 10% of being off task. An anger outburst would not

be tolerated with a supervisor, and only once with a co-worker.

## Legal Standard

To be eligible for DBI under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or

medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619

Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**RFC**

A claimant's residual functional capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations.  *See* 20 C.F.R. § 404.1545.  An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision from December 10, 2019, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2014, the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe

impairments of degenerative disc disease, degenerative joint disease, status-post hernia repair, diabetes mellitus, coronary artery disease (status-post myocardial infarction), hypertension, a seizure disorder, obesity, insomnia/sleep apnea, depression, anxiety, and post-traumatic stress disorder  The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404, subpart P, appendix 1, (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    The ALJ determined that Plaintiff retained the residual functional capacity to sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ropes, ladders, or scaffolds, and never balance (defined in the DOT and SCO as walking, crouching or running on narrow, slippery, or erratically moving surfaces), kneel, crouch, or crawl, but can occasionally climb ramps and stairs, and occasionally stoop. He can frequently reach and handle. He can have no exposure to unprotected heights or hazardous machinery; cannot drive a vehicle as part of the job; and can have no concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation. The claimant can learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete

simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only minimal changes in job setting and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks. He can have no contact with the general public; and he is able to work close to or occasionally with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

At Step Four, the ALJ found Plaintiff unable to perform his past relevant work as a rental manager. At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as circuit board touch-up worker, a semiconductor bonder, and an electronic patcher. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issue here is (1) whether there is substantial evidence to support the decision of the commissioner.

## Discussion

Plaintiff argues the ALJ erred in her analysis of Plaintiff's insomnia and need to rest or nap during the day, making her RFC unsupported by the majority of the evidence. Plaintiff complains that the ALJ only mentions four medical visits and jumps from August 11, 2015 to February 7, 2017, yet there are 18 office visits that reference Plaintiff's insomnia.

The ALJ noted that Plaintiff reported his insomnia throughout his medical visits.  She recognizes that Plaintiff's reports of insomnia were presented to his providers but concluded that the record as a whole does not show that naps were medically necessary.  As the Commissioner points out, Plaintiff's medical records do not show that he is unable to drive, complete activities of daily living, or attend scheduled appointments. Plaintiff has a driver's license and drives without accompaniment.  His lack of driving is due to road rage rather than the inability to drive because of disabling insomnia.

The ALJ considered Plaintiff's insomnia and accounted for it in her finding of sedentary work with detailed limitations.

Plaintiff also argues the ALJ did not properly consider the opinion of Plaintiff's nurse practitioner, Geoff Westhoff, A.P.N. Nurse Westhoff opined that Plaintiff would be off-task 25% of the time or more.  He would miss four or more days of work per month.  He would need frequent breaks for panic attacks.

The ALJ found Nurse Westhoff's opinions to be given partial weight because they relied substantially on Plaintiff's subjective complaints. While the Court agrees that psychological assessments indeed rely on a patient's descriptions that cannot be empirically specifically tested, the ALJ thoroughly discussed the entire record in her determination that Plaintiff's subjective complaints were not entirely supported by the entire record before her. Nurse Westhoff's own records establish that Plaintiff consistently had normal speech, thought content, thought processes, cognition, and impulse control. These are objective observations which go against Plaintiff's subjective complaints of disabling insomnia. Nurse Westhoff's notes indicate that Plaintiff reported his medications were working well in July 2016. Most of Nurse Westhoff's notes in 2016 indicate Plaintiff's mental status was normal. These findings do not correspond with the disabling report given by Nurse Westhoff.

The ALJ also discussed Dr. Sanchez, M.D.'s findings that Plaintiff was pleasant and cooperative, had intact memory and attention, and normal impulse control. Plaintiff had good insight and judgment, no pressured speech, good registry and recall, did not appear overly depressed in April 2016. This evidence contributes to the finding that Plaintiff's mental impairments were disabling.

All the relevant evidence supports the ALJ's RFC determination. She examined the entire record and her opinion is substantially supported by the evidence before her.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 19th day of July, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

---

[i] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).